### STATE

v.

### Richard WIGGS.

### No. 92–488–C.A.

Supreme Court of Rhode Island.

Dec. 20, 1993.

Jeffrey Pine, Atty. Gen., Aaron Weisman, Asst. Atty. Gen., Lauren Sandler Zurier, Sp. Asst. Atty. Gen., for plaintiff.

Richard A. Ciccone, Providence, for defendant.

## OPINION

SHEA, Justice.

This matter comes before the Supreme Court on the appeal of the defendant Richard

Wiggs (Wiggs) from a Superior Court denial of his motion to dismiss a breaking and entering complaint on grounds of collateral estoppel. For the reasons that follow we reverse the decision of the Superior Court.

On May 1, 1990, defendant pleaded nolo contendere to one count of breaking and entering without the consent of the owner and to one count of simple assault. The defendant received a suspended sentence of three years at the Adult Correctional Institutions as well as five years of probation.

Later defendant was charged with breaking and entering, simple assault, and assault with a dangerous weapon as a result of an incident that occurred on May 20, 1991. On the basis of these charges, defendant was brought before a justice of the Superior Court on a probation-revocation hearing pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure.

At the hearing the state presented the victim, James J. Burns (Burns), who testified that on the night of May 20, 1991, both he and his apartment mate, Edward Gauthier (Gauthier), were asleep when Burns awoke to the sounds of screaming and loud thumping in the apartment.

Upon waking, Burns got out of bed and turned on a bedroom light. He then went to the living room and turned on the light, where he saw an acquaintance of his, Tom Brooks (Brooks), standing in the hallway between the kitchen and the living room. Burns also noticed that the apartment door was open and that the doorknob was broken. Burns asked Brooks what was going on, and Brooks responded by asking Burns who he was. Burns answered, "Jay," whereupon Brooks ran toward him. Burns ran back into his bedroom, but Brooks followed him and began punching him in the stomach, face, and arms.

While Burns was being struck by Brooks, David Palazzo (Palazzo), also an acquaintance of Burns's, entered the bedroom "screaming and hollering" that he wanted money. After Palazzo entered the bedroom, defendant, also an acquaintance of Burns's, followed him in. Brooks had Burns in a choke hold at that point, and Burns asked defendant what he

was doing there. The defendant responded that he, Burns, had "f* * * with his friend." Burns did not respond, but defendant approached him and punched him in the head twice while Brooks was holding him from behind.

After defendant struck him, Burns broke free from Brooks and ran into the kitchen. When Burns grabbed the telephone to call the police, he saw that the cord had been pulled from the wall. Upon realizing that the telephone was not operable, Burns grabbed a two-by-four-inch piece of wood from a window. After he grabbed the two-by-four, Brooks and defendant entered the room, and Brooks wrestled the wood away from Burns. After obtaining the wood, Brooks struck Burns in the face with it, breaking one of Burns's teeth. Burns fell to the floor, whereupon Brooks dropped the wood and began hitting and kicking him. At that point Wiggs kicked Burns once then ran out of the apartment.

At the violation hearing, defendant testified in his own behalf. He stated that on the night in question he drove with the others to Burns's apartment in Coventry. He stated that upon arriving at the apartment the others went up the stairs leading to Burns's apartment. Instead of entering immediately, defendant stopped to relieve himself near garbage cans in the yard and then went back to the car to retrieve "a couple of beers." The defendant then entered the building. He stated that he opened the door to the house and proceeded upstairs to Burns's apartment.

Arriving at Burns's actual apartment, defendant found the door open and saw Brooks and Burns fighting on the kitchen floor. He could also hear Mark Deniger and Gauthier fighting in Gauthier's bedroom. The defendant approached Brooks and Burns and yelled, "Cut it out and break it up." He then attempted to pull Brooks off Burns. The defendant stated that at no time did he strike Burns in any manner either with his hands or with his feet. Upon realizing that he was powerless to stop the fighting and not wanting to be caught in the apartment if Burns's landlady showed up, defendant left the apartment and waited outside.

At the conclusion of the probation-revocation hearing, the trial justice found that Wiggs was a violator of his probation. She stated:

"Because Mr. Wiggs is on probation, his behavior must be not only lawful, it must be impeccable. The standard by which the Court must be satisfied is that the Court must be reasonably satisfied, not beyond a reasonable doubt, not even that Mr. Wiggs committed a felony, not even that he committed a misdemeanor, but that he was not of good behavior. Mr. Wiggs' behavior was not good.

"There is not sufficient evidence, it's true, to prove even beyond a reasonable satisfaction standard, that Mr. Wiggs was present at the time the apartment was broken into and enter[e]d by the others, however, Mr. Wiggs had no legitimate purpose to be on those premises, and I find that he was trespassing. I also find that he was involved in an assault, albeit a simple assault, on the victim James Burns, and his behavior otherwise was not in conformance with the behavior which should be consistently displayed by anyone who was on probation. Probation is not a joke; a suspended sentence is not a joke. A person can be violated for hanging around with the wrong people only, which apparently Mr. Wiggs is developing a habit of doing.

"For those reasons, Mr. Wiggs is declared to be a violator."

Sometime after the probation-revocation hearing defendant filed a motion to dismiss the charges of breaking and entering and assault with a dangerous weapon. At a hearing on defendant's motion to dismiss, the state agreed to file a Super. R.Crim. P. 48(a) motion dismissing the charge of assault with a dangerous weapon. At the hearing, defendant then asserted that he could not be tried on the charge of breaking and entering as that matter had been litigated previously at the probation-revocation hearing. The defendant conceded that he could be found guilty of simple assault.

At the conclusion of the hearing on the motion to dismiss, the trial justice deter-

mined that the breaking and entering charge was not fully litigated at the prior hearing. He therefore denied defendant's motion.

■ At the outset we note that this court has jurisdiction over this matter pursuant to *Abney v. United States*, 431 U.S. 651, 97 S.Ct.2034, 52 L.Ed.2d 651 (1977). Ordinarily a denial of a motion to dismiss a criminal action is not a final judgment from which an appeal may be taken. However, when the motion to dismiss is based upon double-jeopardy and collateral-estoppel grounds, we allow an immediate appeal. *See State v. Chase*, 588 A.2d 120, 122 (R.I.1991); *State v. Berberian*, 122 R.I. 693, 697, 411 A.2d 308, 310 (1980).

In *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970), the Supreme Court stated that collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."

■ In order to determine whether collateral estoppel bars a subsequent proceeding, a three-step analysis must be conducted. Collateral estoppel acts as a bar if there is an identity of issues, the prior proceeding resulted in a final determination on the merits, and the party against whom collateral estoppel is sought is the same as, or in privity with, the party in the prior proceeding. *Providence Teachers Union, Local 958 v. McGovern*, 113 R.I. 169, 172, 319 A.2d 358, 361 (1974).

■ In this matter there is no question that the parties are the same parties who were involved in the probation-revocation hearing. Furthermore the record reveals that there was a final judgment on the merits. At the conclusion of the hearing the trial justice stated:

"There is not sufficient evidence, it's true, to prove even by a reasonable satisfaction standard, that Mr. Wiggs was present at the time the apartment was broken into and enter[e]d by the others, however, Mr. Wiggs had no legitimate purpose to be on those premises, and I find that he was trespassing. I also find that he was in-

volved in an assault, albeit a simple assault, on the victim James Burns."

In *State v. Chase*, this court addressed the issue of whether the finding that results from a probation-revocation hearing constitutes a final and valid judgment. The defendant in *Chase* was arrested after allegedly selling cocaine to an undercover police officer while the defendant was on probation for a previous offense. A probation-revocation hearing was held, and the trial justice denied the motion to find the defendant in violation of his probation. Following the hearing the defendant filed a motion to dismiss the criminal action on the grounds of collateral estoppel, double jeopardy, and due process. The trial justice denied the motion. An appeal was taken to this court, and we reversed the lower court's decision on the grounds that collateral estoppel barred a relitigation of the charges since "the finding of nonviolation is a valid and final judgment." *Chase*, 588 A.2d at 122.

Although in *Chase* we dealt with a situation in which a defendant was not deemed to be a violator, the rationale used is applicable to the case at bar. In this matter the trial justice clearly stated that there was insufficient evidence to find that defendant had committed breaking and entering. Although defendant was found to have violated the terms of his probation, he was adjudged a violator on grounds of trespass and simple assault, not on the basis of breaking and entering. Therefore, we are of the opinion that the probation-revocation hearing constituted a final judgment on the merits.

As regards the identity-of-issues requirement, in *State v. Chase* this court stated that there are three factors that must be considered:

"[F]irst, the issue sought to be precluded must be identical to the issue decided in the prior proceeding; second, the issue must actually have been litigated; and third, the issue must necessarily have been decided." *State v. Chase*, 588 A.2d at 123 (citing *Lucido v. Superior Court*, 51 Cal.3d 335, 341, 795 P.2d 1223, 1225, 272 Cal.Rptr. 767, 769 (1990)).

In this matter the state concedes that the instant issue is identical to that of the probation-revocation hearing. However, on appeal the state argues that the issue of breaking and entering was not actually litigated. The state contends that it lacked a "full and fair opportunity" to litigate the breaking-and-entering charge because it lacked the incentive to litigate that issue vigorously, since defendant could have been adjudged a violator on several different grounds.

In *Chase* this court did not specifically define the term "actually litigated." However, the court did determine that the issue there presented was actually litigated because each party "had a full and fair opportunity to present evidence and call witnesses." *Chase*, 588 A.2d at 123. In *Lucido* the California Supreme Court was also of the opinion that as long as all parties were permitted to present evidence and witnesses in support of their positions, then the issues raised were "actually litigated." *Lucido*, 51 Cal.3d at 341, 795 P.2d at 1225, 272 Cal.Rptr. at 769.

In this matter both parties were provided with an opportunity to present evidence and call witnesses. The state argues, however, that it would have called more witnesses had there been an incentive to litigate the breaking and entering charge fully. The state also contends that it wanted to call Gauthier to testify at the hearing but that he could not be located in time to appear.

In *People v. Sims*, 32 Cal.3d 468, 651 P.2d 321, 186 Cal.Rptr. 77 (1982), the California Supreme Court stated:

"The failure of a litigant to introduce relevant available evidence on an issue does not necessarily defeat a plea of collateral estoppel. * * * Even a judgment of default in a civil proceeding is 'res judicata as to all issues aptly pleaded in the complaint and defendant is estopped from denying in a subsequent action any allegations contained in the former complaint.'" *Id.* at 481, 651 P.2d at 329, 186 Cal.Rptr. at 85 (quoting *Fitzgerald v. Herzer*, 78 Cal. App.2d 127, 132, 177 P.2d 364, 366 (1947)). *See also Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd.*, 58 Cal.2d 601, 375 P.2d 439, 25 Cal. Rptr. 559 (1962).

We concur with the California court and determine that as long as both parties are provided the opportunity to present evidence and to call witnesses, then a full and fair hearing has been conducted. We therefore conclude that in the instant matter the state was provided with a full and fair hearing. The defendant should not be penalized for the state's tactical decision not to present a full case on all counts at the probation-revocation hearing.

The state next asserts that the trial justice did not "necessarily decide" the breaking and entering issue because she found defendant to be a violator on the basis of other grounds.

We shall repeat that at the conclusion of the probation-revocation hearing, the trial justice stated: "There is not sufficient evidence, it's true, to prove even by a reasonable satisfaction standard, that Mr. Wiggs was present at the time the apartment was broken into and enter[e]d by the others." Furthermore at the sentencing hearing the trial justice stated: "[M]y finding is that he [Wiggs] committed a simple assault and trespassing. I did find that the State had failed to prove a breaking and entering without the consent of the owner."

It is clear to this court that the trial justice did decide the issue of breaking and entering. We have held that the decision of the trial justice at a probation-revocation hearing is a final and valid judgment. *See State v. Chase*, 588 A.2d at 122. Given the strength of the trial justice's comments, we conclude that there can be no question that a judgment on the charge of breaking and entering was reached.

For these reasons the defendant's appeal is sustained, the denial of the motion to dismiss is reversed, and the case is remanded to the Superior Court with directions that the charge of breaking and entering against the defendant be dismissed.